# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 10, 2002

## STATE OF TENNESSEE v. WENDELL RAY WILLIAMS

**Appeal from the Criminal Court for Davidson County**
**No. 2001-A-108     Cheryl Blackburn, Judge**

---

**No. M2001-02296-CCA-R3-CD - Filed April 4, 2003**

---

A Davidson County Criminal Court jury convicted the defendant, Wendell Ray Williams, of possessing one-half gram or more of cocaine with intent to sell, a Class B felony, and the trial court sentenced him as a Range III, persistent offender to twenty-five years in the Department of Correction (DOC).  The defendant appeals, claiming that the trial court erred by (1) denying his motion to suppress evidence; (2) allowing a police officer to testify as an expert in drug investigation; (3) admitting evidence of the facts underlying his 1995 conviction for selling cocaine under Tenn. R. Evid. 404(b); (4) allowing the state to impeach him with his prior convictions for selling cocaine, car theft, and passing forged papers under Tenn. R. Evid. 609; and (5) refusing to instruct the jury on the lesser included offense of facilitation.  We conclude that the trial court erred by admitting evidence of the defendant's involvement in the 1995 cocaine sale and allowing the state to impeach the defendant with his resulting conviction.  In addition, we conclude that the trial court erred by refusing to instruct the jury on facilitation.  We reverse the judgment of the trial court and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed, Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY, J., joined.  DAVID G. HAYES, J., filed a dissenting opinion.

Sam E. Wallace, Jr., Nashville, Tennessee, for the appellant, Wendell Ray Williams.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the Vanderbilt University Police stopping the defendant's car on November 11, 1999.  Officer Donald Godby testified that about 11:15 p.m., he and Officer Juan

Monarez saw a Chrysler New Yorker with its headlights turned off in an alley between Seventeenth and Eighteenth Avenues South in Nashville. The car turned from the alley onto Edgehill Avenue and stopped at a traffic light at Edgehill and Seventeenth Avenues. When the light turned green, the driver still had not turned on the car's headlights, and Officer Godby decided to stop it. As he approached the car, Officer Godby saw that the defendant's wife, Delores Williams, was driving and that the defendant was sitting in the front passenger seat. He asked Mrs. Williams for her driver's license, and she told him that she did not have one. Officer Godby ran a computer check on Mrs. Williams, learned that she had outstanding warrants, and arrested her. Officer Godby put Mrs. Williams into the back of his patrol car and asked the defendant to get out of the New Yorker. Vanderbilt Officer William Amburn arrived at the scene, searched the car, and found an orange pill bottle in the center console. The pill bottle did not have a prescription label and contained about twenty white rocks. Officer Godby said the defendant told the officers that the pill bottle contained drugs and that the drugs belonged to him.

Officer Godby testified that Mrs. Williams told him that she was unemployed and that the defendant worked at a Wendy's Restaurant. The officers found no drug paraphernalia in the car, on Mrs. Williams, or on the defendant but found about one hundred forty dollars in the defendant's pocket. A police officer from the Nashville Metropolitan Police Department (Metro Police) brought a drug test kit to the scene, and the white rocks tested positive for cocaine. Donna Flowers, a forensic chemist with the Tennessee Bureau of Investigation (TBI), later testified that the pill bottle contained 5.3 grams of crack cocaine.

On cross-examination, Officer Godby testified that the only reason he stopped the New Yorker was because the car's headlights were off. He said that when he turned on his patrol lights, Mrs. Williams stopped the car immediately. He said that at first, he intended to write her a misdemeanor citation for driving without a license but decided to search the car after he learned Mrs. Williams had outstanding warrants. He said the pill bottle was not tested for fingerprints, and he acknowledged that the Vanderbilt University Police Department's jurisdiction ended at the intersection of Edgehill and Seventeenth Avenues.

Vanderbilt University Police Officer Juan Monarez testified that about 10:45 p.m. on November 11, he and Officer Godby saw a Chrysler New Yorker traveling with its headlights off. The driver never turned on the car's headlights, and the officers decided to stop it. During the stop, Officer Godby learned that Mrs. Williams had outstanding warrants and arrested her. Officer Amburn arrived, searched the car, and found a pill bottle. Officer Monarez saw crack cocaine in the bottle and asked the defendant if the drugs belonged to him. He said that the defendant said yes and that he read the defendant his rights.

Vanderbilt University Police Officer William Amburn testified that he searched the New Yorker. He said that he found a pill bottle in the console between the front two seats, that he opened the bottle and looked inside, and that he showed the bottle to Officer Monarez. He said he did not request that the bottle be tested for fingerprints.

Metro Police Sergeant William Mackall testified as an expert in drug investigation. He said that most crack users smoked crack rocks that were smaller than a pencil eraser and weighed .1 to .2 grams. He said that if police officers found crack on a drug user, they usually found only one small rock. He said that crack users usually carried a crack pipe on their person but not much cash. The state showed Sergeant Mackall the pill bottle and crack rocks that Officer Amburn found in the defendant's car. He said he had seen drug users and sellers put crack cocaine in orange pill bottles before. He said the crack rocks in the bottle had been precut into different sizes for resell and were worth about six hundred dollars.

Metro Police Officer Andy Wright testified that on June 15, 1994, he and Officer Jeff Cherry were working undercover to buy crack cocaine. He said that as they were driving on Jo Johnson Street, they saw the defendant sitting on the sidewalk. He said the defendant flagged them down and asked what they were looking for. He said that Officer Cherry told the defendant he wanted to buy twenty dollars worth of crack and that the defendant said, "I'll take care of you." He said the defendant ran toward a housing development, appeared to shout at someone, and ran back to the car and told them, "Tony will be here in a minute." He said that "Tony" turned out to be a man named Robert Moore and that Mr. Moore came to the car and sold Officer Cherry a crack rock. He said that a take-down team arrested the defendant and Mr. Moore and that the rock weighed .1 gram. He said the police did not find drugs or money on the defendant.

The defendant testified that he was fifty years old and had been married to his wife for ten years. He said that on November 11, 1999, his wife wanted to go to a friend's apartment and that he rode to the apartment with her in his 1985 New Yorker. He said that she drove because she was "[in] a hurry to get to her activities." He said that he "knew what kind of activity was about to go on" at the apartment and that he sat in the car while she went inside. He said that as they pulled out of the apartment complex, the police stopped them and an officer approached the car. He said the officer asked to see his wife's driver's license and told her that her headlights were turned off. He said the police learned his wife did not have a driver's license and asked him if he had a license. He said that he told them no but that he had a friend up the street who could drive the car home. He said he was shocked to learn his wife had outstanding warrants. He said that an officer asked him to step out of the car and that the officer searched it. He said the officer came out of the car holding a pill bottle and said, "Look what I found." He said that one of the officers asked him, "Whose drugs are these?" and that he told the officer the drugs belonged to his wife. He said that another officer asked him if "this" was his and that he said yes because he thought the officer was asking him about the car. He said he did not know the drugs were in the car.

The defendant testified that he did not put the 1994 drug deal together. He said that he was sitting on the sidewalk that day but that he did not flag down the officers and did not motion for anyone in the housing development. He said that as a result of his 1994 arrest, he pled guilty to selling less than one-half gram of cocaine in 1995. He said that he had to plead guilty because Mr. Moore pled guilty. He said that in 1994, he was addicted to drugs and weighed one hundred thirty-five pounds. He said that he had been off drugs for seven years and that at the time of trial he weighed two hundred fifty-five pounds. He said that his wife was a drug addict and that he stayed

with her because he loved her. He said that he allowed his wife to go to her friend's apartment and drive his car on November 11 because he did not want to argue with her. He said that he made two hundred eighty dollars per week at Wendy's and that he was not selling drugs. In addition to his 1995 conviction for selling cocaine, he acknowledged having prior convictions for auto theft and passing forged papers.

On cross-examination, the defendant testified that he did not know where his wife got several hundred dollars to buy drugs and that he did not see her put the drugs in the car. He acknowledged testing positive for cocaine while on bond and awaiting trial but said that he tested positive because he had been around someone who smoked crack. The jury convicted the defendant of possessing one-half gram or more of cocaine with intent to sell.

## I. MOTION TO SUPPRESS

The defendant contends that the trial court erred by denying his motion to suppress evidence that the police found pursuant to the traffic stop. He claims that the Vanderbilt University police officers had no right to stop and search his car because they were outside their jurisdiction. However, as the state points out in its brief, the defendant has not included a transcript of the hearing on the motion to suppress in the record on appeal. It is the defendant's duty "to have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to the issues that are the bases of appeal." T.R.A.P. 24(b). When necessary parts of the record are not included on appeal, this court must presume that the trial court's ruling was correct. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

## II. EXPERT TESTIMONY

Next, the defendant contends that the trial court erred by allowing Officer William Mackall to testify as an expert in drug investigation. He contends that Officer Mackall was not qualified to testify about whether the defendant possessed the crack cocaine for personal use or for sale. However, the trial transcript reveals that the defense failed to make a contemporaneous objection to Officer Mackall's being qualified as an expert. Thus, the defendant has waived this issue. See Rule 36(a), T.R.A.P. Moreover, we discern no plain error. See Tenn. R. Crim. P. 52(b).

## III. 404(b) EVIDENCE

The defendant claims that the trial court erred by allowing Officer Andy Wright to testify about the defendant's acting as the go-between in Robert Moore's sale of crack cocaine to Officer Jeff Cherry in 1994. Specifically, he contends that Officer Wright's testimony was inadmissible propensity evidence. The state claims that the trial court properly admitted the evidence. We conclude that the trial court improperly admitted Officer Wright's testimony.

Rule 404(b), Tenn. R. Evid, prohibits the introduction of evidence of other crimes or acts, except when the evidence of other acts is relevant to a litigated issue, such as identity, intent, or motive, and its probative value is not outweighed by the danger of unfair prejudice. The rule states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

The Advisory Commission Comment to the rule notes that under this procedure, the trial court must further find that the evidence of the other act is "clear and convincing" as required by State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985). When a trial court substantially complies with the procedural requirements of the rule, its determination will not be overturned absent an abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).

In a jury out hearing, the defendant argued that evidence of the 1994 drug transaction was irrelevant and that its probative value was outweighed by the danger of unfair prejudice. The state claimed that the evidence was relevant to show the defendant's intent to sell. The trial court noted that the defendant's intent in this case was a "hotly contested issue" and agreed with the state that Officer Wright's testimony was relevant to show the defendant's intent. It also ruled that the probative value of the evidence was not outweighed by the danger of unfair prejudice. After Officer Wright testified on direct examination, the trial court instructed the jury that it could consider his testimony only for the purpose of determining whether the defendant had intended to sell the cocaine.

In State v. Keith A. Otey, No. M2000-01809-CCA-R3-CD, Davidson County (Tenn. Crim. App. Apr. 16, 2002), the defendant also was charged with possession of cocaine with intent to sell. Before trial, the state asked for permission to introduce evidence that the defendant had sold crack cocaine to an undercover officer six years earlier. The trial court granted the state's motion, ruling that evidence of the prior sale was relevant to the issue of the defendant's intent. On appeal, this court held that because the prior bad act occurred six years before trial and bore no logical

relationship or connection to the current offense, "there [was] only the extrapolation that, if the Defendant sold drugs previously, he must have intended to sell the drugs in his possession in this case." Id., slip op. at 6. Moreover, this court determined that the evidence had an undue prejudicial effect on the defendant and that a limiting instruction did not cure the trial court's error.

This case is sufficiently similar to Keith A. Otey to warrant the same result. The defendant's involvement in the 1994 drug sale took place more than five years before the present offense. We believe that Officer Wright's testimony created the strong potential for the jury to consider the 1994 evidence improperly as propensity evidence. Moreover, the unfair prejudice resulting from the jury's learning of the prior drug deal outweighed any probative value that could be derived from that evidence. Although the trial court gave a limiting instruction, that instruction did not cure the trial court's error, and the defendant's conviction must be reversed and the case remanded for a new trial.

## IV. PRIOR CONVICTIONS FOR IMPEACHMENT

The defendant claims that the trial court erred by ruling that his 1995 conviction for selling cocaine, his 1987 conviction for car theft, and his 1983 convictions for passing forged papers were admissible as crimes of dishonesty to impeach his credibility. See Tenn. R. Evid. 609(a)(2). Regarding his 1995 conviction, he contends that selling drugs is not a crime of dishonesty. Regarding his 1983 and 1987 convictions, he claims they were inadmissible because they were outside the ten-year time limit provided by Tenn. R. Evid. 609(b). The state claims that the trial court properly ruled that it could impeach the defendant with his prior convictions. We conclude that the trial court did not err with regard to the 1987 and 1983 convictions but that the trial court improperly determined that the state could impeach the defendant with his 1995 conviction for selling cocaine.

Before trial, the state provided written notice of its intent to impeach the defendant with his 1995 conviction for selling less than one-half gram of cocaine, his 1987 conviction for car theft, and his 1983 convictions for four counts of passing forged papers. At a pretrial hearing, the defendant objected to the state's use of the prior drug conviction, arguing that proof of the conviction had little probative value for untruthfulness because the trial court had already ruled that the underlying facts of the conviction could be introduced through Officer Wright's testimony. The defendant also claimed that the 1995 conviction was inadmissible propensity evidence. As to the 1987 and 1983 convictions, the defense argued that they were too old to be admissible. The trial court ruled that the 1995 drug conviction was admissible because it was a crime of dishonesty and clearly probative of the defendant's credibility. The trial court agreed that the 1987 and 1983 convictions were outside the ten-year time limit provided in Rule 609. However, it held that the prior convictions were admissible, stating as follows:

> I'm going to allow . . . those to come in because one, they are so probative of credibility. I mean passing forged papers and larceny of an auto are clearly crimes of dishonesty. It also shows that the defendant continues a history of dishonesty. There has been

> sufficient notice given and I just think the probative value is just very great.

Pursuant to the conditions and procedures set forth in Rule 609, Tenn. R. Evid., the credibility of the accused may be attacked by presenting evidence of prior convictions if certain conditions are met. First, the state must give reasonable pretrial notice of the impeaching convictions. Tenn. R. Evid. 609(a)(3). In addition, the convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Also, the trial court must find that the impeaching conviction's probative value on credibility outweighs its unfair prejudice to the substantive issues. Tenn. R. Evid. 609(a)(3). In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility. State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). If "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). Finally, less than ten years must have elapsed between the defendant's release from confinement for the prior conviction and the commencing of the prosecution. Tenn. R. Evid. 609(b). However, a prior conviction outside the ten-year time period may still be used to impeach the witness if the defendant is given sufficient notice of the state's intent to use such evidence and the trial court determines that the probative value of the evidence substantially outweighs any prejudicial effect. Id. A trial court's ruling under Rule 609 will not be reversed absent an abuse of discretion. See Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979).

In support of its argument that evidence of the defendant's 1995 conviction is admissible, the state's brief cites State v. Brian Roberson, No. 01C01-9801-CC-00043, Williamson County, slip op. at 12-14 (Tenn. Crim. App. Dec. 21, 1998), app. denied (Tenn. May 13, 1999), in which a panel of this court held that the defendant's prior convictions for selling cocaine were crimes of dishonesty and, therefore, highly probative of his credibility. However, we hold that this issue has already been resolved in State v. Walker, 29 S.W.3d 885, 890-91 (Tenn. Crim. App. 1999), which remains the controlling precedent. See Tenn. S. Ct. R. 4(H)(2) (providing that published opinions "shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction"). In Walker, we held that neither the desire to evade detection nor the environment surrounding the crime reveal the dishonesty contemplated by Rule 609(a)(2): "Relative to Roberson, we question whether we can assume that the defendant's previous sales of cocaine for which he was convicted involved money laundering, tax evasion, or other so-called deceitful conduct." 29 S.W.3d at 891. Although not cited by the state, the recent cases of State v. Christopher Knighton, No. E2000-00746-CCA-R3-CD, Blount County, slip op. at 8 (Tenn. Crim. App. Feb. 15, 2001), and State v. Vernon Dewayne Waller, No. M2001-02414-CCA-R3-CD, Davidson County, slip op. at 4 (Tenn. Crim. App. Aug. 23, 2002), app. granted (Tenn. Dec. 23, 2002), expand upon the Roberson reasoning by adding that persons who engage in the profitable enterprise of drug dealing are frequently addicted to drugs and often commit other crimes in order

-7-

to fund their drug habit. We also question whether we can assume such circumstances from the fact that a defendant has prior drug-related convictions. Furthermore, "almost all crimes are committed with the intention of not being caught." Walker, 29 S.W.3d at 891. In looking to the evidence relating to the elements of the crime rather than the circumstances or environment surrounding it, we concluded in Walker that "the mere fact of the sale of cocaine is not as probative of the defendant's credibility as would be an offense involving dishonesty or false statement." Id. We remain convinced that the desire not to be caught does not, in and of itself, transform drug-related offenses into crimes of dishonesty.

In this case, the fact that the defendant had a prior conviction relating to the sale of cocaine greatly increases the potential for the jury to decide that the defendant possessed cocaine with intent to sell on November 11, 1999. Because we conclude that the probative value of the defendant's 1995 conviction did not outweigh its prejudicial effect, we hold that the trial court committed reversible error by ruling that the state could impeach the defendant with it.

The defendant also contends that the 1987 and 1983 convictions were inadmissible because they were over ten years old. Initially, we note that the only argument the defendant's brief makes regarding this issue is as follows:

> Appellant would further assert to this Honorable Court that allowing [a prior conviction for auto theft], which was prior to ten (10) years before the arrest in this case, together with a 1983 case alleging [passing forged papers], which were not within the time limits which the rules of evidence has set for prior cases to be legally admissible on the issue of whether or not a witness has credibility. Defendant would submit that, therefore, this is reversible error.

The appealing party's brief "shall contain" an "argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to authorities and appropriate references to the record . . . relied on." T.R.A.P. 27(a)(7). This court will treat as waived issues unsupported by "argument, citation to authorities, or appropriate references to the record." Tenn. Ct. Crim. App. P. 10(b). The defendant has fallen far short in complying with the requirements of Rule 27.

Nevertheless, the trial court ruled that even though the convictions were stale, they were admissible because the state gave sufficient notice to the defendant of its intent to use the convictions and because the probative value of the evidence greatly outweighed its prejudicial effect. Given the relevance of the crimes to the defendant's credibility and the fact that the theft and forgery convictions were dissimilar to the crime in question, we do not believe the trial court abused its discretion in ruling that those convictions were admissible for impeachment purposes.

## V. LESSER INCLUDED OFFENSE INSTRUCTION

Finally, the defendant claims that the trial court erred by failing to instruct the jury on the lesser included offense of facilitation of possession of cocaine with the intent to sell. The state contends that the trial court properly refused to give a facilitation instruction. We believe that the trial court erred by refusing to give the requested instruction to the jury.

Our supreme court has held that an offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
> > (1) a different mental state indicating a lesser kind of culpability; and/or
> >
> > (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
> > (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> >
> > (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> >
> > (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). If an offense is a lesser included offense, then the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the

-9-

lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469. If a trial court improperly omits a lesser included offense instruction, then constitutional harmless error analysis applies and this court must determine if, beyond a reasonable doubt, the error did not affect the outcome of the trial. State v. Ely, 48 S.W.3d 710, 725 (Tenn. 2001). "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002).

Tenn. Code Ann. § 39-17-417(a)(4) prohibits a defendant from knowingly possessing a controlled substance with the intent to manufacture, deliver, or sell the controlled substance. Under Tenn. Code Ann § 39-11-403(a), facilitation of a felony occurs if a person, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), . . . knowingly furnishes substantial assistance in the commission of the felony."

After the defendant testified, the defense asked the trial court to instruct the jury on facilitation. The following exchange then occurred:

| [The state]: | Judge, I think that Mr. Williams' testimony was that he didn't know what was going on. He really took no part, if you believe his testimony, in any criminal activity. He didn't provide her with any money. He didn't provide her with anything. He didn't drive her over there. He was just merely present, and he couldn't even be guilty of facilitation under his testimony. |
|---|---|
| THE COURT: | I'll have to agree with the state on that, so I'm not going to charge that, so the charge will be as it is. |

The trial court instructed the jury on possession with intent to sell and simple possession.

Initially, we note that our legislature has adopted comments that expressly note that facilitation is a lesser included offense of the crime charged. See Tenn. Code Ann. § 39-11-403, Sentencing Commission Comments. Therefore, we must determine whether the evidence, taken in the light most favorable to the defendant, warranted a facilitation instruction. We believe that it did.

-10-

The defendant and his wife were indicted for possessing one-half gram or more of cocaine with intent to sell and were tried together. After the state's case in chief, the trial court granted Delores Williams's motion for judgment of acquittal. On direct examination, the defendant testified that the drugs belonged to his wife and that he did not know they were in the car. He also said that when he rode with her to the friend's house, he "knew what activities was fixing to happen" but that he did not stop her from going there because he did not want to argue with her. On cross-examination, the following exchange occurred:

> Q.    Okay. Now this night that this happened, you said that your wife wanted to go over to this location near Vanderbilt University; right?
>
> A.    Yes.
>
> Q.    And you knew why she was going over there?
>
> A.    Yes, I did.
>
> Q.    But you deplored this drug habit that your wife had; correct?
>
> A.    I enabled it.
>
> Q.    Well, you didn't like it; did you?
>
> A.    No, I didn't.
>
> Q.    All right, but yet you got in the car and went over there with her?
>
> A.    Yes, I did.

The defendant testified that he knew his wife was going to the apartment to participate in drug activity, that he allowed her to drive his car to the apartment, that he rode with her, and that he waited in the car for her while she went inside. Given the proof, we believe the jury could have reasonably concluded that the defendant facilitated his wife's possessing cocaine with intent to sell. Moreover, in our review of the record, we cannot say that the trial court's failure to instruct the jury on facilitation was harmless beyond a reasonable doubt.

We conclude that the trial court committed reversible error by allowing Officer Wright to testify about the underlying facts of the defendant's 1995 drug conviction, by ruling that the state

could impeach the defendant with that conviction, and by refusing to instruct the jury on facilitation to possess one-half gram or more of cocaine with intent to sell. The defendant's conviction is reversed, and the case is remanded for a new trial.

 

 

_____
JOSEPH M. TIPTON, JUDGE